UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTON EWING<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>US HEALTHCARE SUPPLY, LLC, et al.<br><br>　　　　　　　Defendants. | Case No.:   19cv2292-LAB (DEB)<br><br>**ORDER GRANTING MOTION TO DISMISS AND DISMISSING MOTION TO STRIKE AS MOOT [DKT. 23]** |

　　　Plaintiff Anton Ewing, a repeat litigant in this District, brought this action against Defendants US Healthcare Supply LLC ("US Healthcare") and Jon Paul Letko ("Letko") (collectively, "Defendants"), citizens of New Jersey and Pennsylvania, respectively, for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §§ 227, *et seq*., and California's Invasion of Privacy Act. Defendants now move to dismiss Plaintiff's First Amended Complaint ("FAC") for lack of personal jurisdiction. (Dkt. 23, Motion to Dismiss ("Mot.").) In the alternative, Defendants seek transfer of this case to the Eastern District of Pennsylvania or the District of New Jersey, where they concede the courts have personal jurisdiction over them. Defendants also ask the Court to strike immaterial allegations from the FAC.

　　　The Court **GRANTS** Defendants' Motion to Dismiss for lack of personal

jurisdiction and **DISMISSES** as moot Defendants' Motion to Strike Paragraphs 1–15, 64–65, and 79 from the FAC.

## I. MOTION TO DISMISS

Once a defendant moves to dismiss for lack of personal jurisdiction, it is the plaintiff's burden to establish that jurisdiction is proper. *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011). If there is no evidentiary hearing, the plaintiff need only make "a prima facie showing of the jurisdiction facts" through pleadings and affidavits. *Myers v. Bennett Law Offices*, 238 F.3d 1068, 1071 (9th Cir. 2001). Although "uncontroverted allegations in the complaint must be taken as true," and "[c]onflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor," *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002), "'bare bones' assertions of minimum contacts with the forum or legal conclusions unsupported by specific factual allegations will not satisfy a plaintiff's pleading burden," *Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007).

### A. Personal Jurisdiction

A forum state's long-arm statute establishes the boundaries of a court's jurisdiction over non-residents. *Mavrix*, 647 F.3d at 1223. "California's long-arm statute, Cal. Civ. P. Code § 410.10, is coextensive with federal due process requirements, so the jurisdictional analyses under state law and federal due process are the same." *Id*. To comport with due process, a court "may subject a defendant to judgment only when the defendant has sufficient contacts with the sovereign 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 880 (2011) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

Jurisdiction can be either "general" or "specific." *Mavrix*, 647 F.3d at 1227. "For general jurisdiction to exist, a defendant must engage in continuous and systematic general business contacts that approximate physical presence in the

forum state." *Id.* at 1223–24 (citations and internal quotation marks omitted). "The standard is met only by 'continuous corporate operations within a state [that are] thought so substantial and of such a nature as to justify suit against [the defendant] on causes of action arising from dealings entirely distinct from those activities.'" *King v. Am. Family Mut. Ins. Co.*, 632 F.3d 570, 579 (9th Cir. 2011) (alterations in original) (quoting *Int'l Shoe Co.*, 326 U.S. at 318). Specific jurisdiction, on the other hand, exists where "the defendant's suit-related conduct . . . create[s] a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). The Ninth Circuit uses a three-part test to determine whether specific jurisdiction applies in a particular case:

> (1) the defendant must either 'purposefully direct his activities' toward the forum or 'purposefully avail[ ] himself of the privileges of conducting activities in the forum';
> (2) 'the claim must be one which arises out of or relates to the defendant's forum-related activities'; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Axiom Foods, Inc.*, 874 F.3d at 1068 (quoting *Dole Food Co., Inc.*, 303 F.3d at 1111) (alteration in original). The plaintiff bears the burden of satisfying the first two prongs. *Id.*

Ewing doesn't assert that Defendants are susceptible to general jurisdiction, and it is evident from the facts alleged that neither Defendant has contacts "so continuous and systematic as to render [them] essentially at home in [California]." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014). The Court finds it does not have general jurisdiction over the Defendants.

A closer question is whether the Court has specific jurisdiction over the Defendants. The crux of Ewing's allegations is that on November 29, 2019, someone affiliated with US Healthcare—and, by extension, Jon Paul Letko, who is US Healthcare's President and Managing Member (Dkt. 23, Declaration of Jon Paul Letko ("Letko Decl.") ¶ 5)—"robodial[ed] Plaintiff on Plaintiff's cell phone to

sell Plaintiff a medical device" using an ATDS system, and Defendant Letko "purchased, setup and activated th[at] [ATDS] system" (Dkt. 22, First Amended Complaint ("FAC") ¶ 61). The FAC alleges that "[t]he robot required Plaintiff to push '1' to get a live human" (*Id.* ¶ 58), and that the call was then transferred to "Cindy" who, Plaintiff alleges, claims "she was in South Africa while on the call" and "asked personal questions and illegally recorded the call" (*Id.* ¶ 92). The Declaration of David S. Eisen, attached in support of Defendants' Motion to Dismiss, offers a transcript of this alleged call. *See Payrovi v. LG Chem Am., Inc.*, 491 F. Supp. 3d 597, 602 (N.D. Cal. 2020) (citing *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977)) ("The Court may consider evidence presented in affidavits and declarations in determining personal jurisdiction."). The transcript shows that the caller, "Cindy," stated she worked for "Wilma TLC," which she identified as a "call center" in South Africa. (Dkt. 23, Declaration of David S. Eisen ("Eisen Decl."), Ex. 2.)  According to the transcript, the call was then transferred to an individual, named "Ace," who claimed he was with the Pain Relief Assistance Center ("PRAC"), though he ultimately admitted he didn't actually work for PRAC. (*Id.*)

Ewing objects to the consideration of the transcript (Dkt. 26 at 3)[1], but the

---

[1] Ewing extensively objected to Defendants' exhibits. (Dkt. 26.) His objections are **OVERRULED** as moot because the Court hasn't relied on the underlying evidence in ruling on the Motion. Ewing's objections to the call transcript (included in Defendants' Exhibit 2) are likewise **OVERRULED** because that call was incorporated by reference in the FAC (FAC ¶¶ 58, 61, 92), and Ewing specifically references and relies on the November 29th call transcript as the basis of his claims against Defendants. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) (quoting *U.S. v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003)) (holding that courts can consider documents under the "incorporation by reference" doctrine when a plaintiff "refers extensively to the document or the document forms the basis of the plaintiff's claim").

Court need not rely on it to find that his allegations with respect to specific jurisdiction are lacking. The FAC offers no facts about how the November 29th call, or any of the other "numerous" calls Ewing claims to have received, are attributable to Defendants, and his Opposition doesn't address this glaring issue. At best, he offers conclusory assertions that Defendants were responsible for the call, but his scant narrative of facts doesn't plausibly support his claim.

Additionally, in support of the motion to dismiss, Defendant Letko submitted a declaration in which he attests that he is a resident of Pennsylvania, where he has lived since 2008. (Dkt. 23, Declaration of Jon Paul Letko ("Letko Decl.") ¶ 2.) He declares he is the President and Managing Member of US Healthcare, a New Jersey limited liability company, which has never maintained offices in any state other than New Jersey. (*Id.* ¶ 5.) He asserts that "US Healthcare has never used telemarketing (either directly by US Healthcare employees or indirectly by use of a third-party 'call center') to initiate contact with potential customers, such as Plaintiff." (*Id.* ¶ 11.) He also states that US Healthcare's marketing was never targeted at California and, in any event, "US Healthcare discontinued all marketing campaigns in 2016." (*Id.* ¶ 10.) Because Ewing hasn't contradicted these assertions or offered his own counter declaration, there is no conflict between the parties' statements to be resolved in Plaintiff's favor. *Cf. Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) ("Conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor.").

Letko has also declared that he has never lived in California, owned any real property in California, had any bank accounts or other assets in California, or paid taxes in California. (*Id.* ¶¶ 2–4.) He explains that his only previous contact with California occurred while he was a managing member of Sierra Nevada Pharmacy Holdings LLC ("Sierra Nevada") (*id.* ¶¶ 31–34), which in turn owned Loyalton Pharmacy, a pharmacy located in Loyalton, California. (*Id.*) When the pharmacist operating Loyalton Pharmacy abandoned the pharmacy, Letko stepped in and filed

necessary paperwork with the California Secretary of State to cancel and dissolve the involved companies. (*Id.* ¶¶ 37–39.) But other than this one isolated and unrelated event, Letko has maintained no business relationships in California, nor are any of the Loyalton-affiliated companies alleged to be associated with US Healthcare. (*Id.*)

Despite Letko's tenuous connections to California, Ewing argues that specific jurisdiction exists because Letko signed and filed the Loyalton-related paperwork. (Opp'n at 8–9.) Ewing doesn't explain how Letko's actions – taken in relation to a totally separate entity from US Healthcare and completely unrelated to the alleged harm in this case – confer specific jurisdiction over him or US Healthcare. Nor has he offered anything to suggest that Defendants' conduct was expressly aimed at the forum state. In sum, his bare formulaic allegations are inadequate to establish specific jurisdiction over Defendants. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).

The Court concludes that the first two prongs of the jurisdictional test are not met, and Ewing has failed to establish specific personal jurisdiction over the Defendants. The Court therefore doesn't reach the issue whether exercising jurisdiction over Defendants in this District would be reasonable.[2] *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, 27 F. Supp. 3d 1002, 1011 (N.D. Cal. 2014) (citing *Sher v. Johnson,* 911 F.2d 1357, 1361 (9th Cir.1990)) ("The plaintiff bears the burden of satisfying the first two prongs, and if he or she fails to satisfy

---

[2] Ewing requests that the Court take judicial notice of an Order Denying Defendants' Motion to Transfer Venue in *Ewing v. Nova Lending Solutions, LLC*, No. 20-cv-1707-DMS-KSC (S.D. Cal.). But as explained, the Court has limited its analysis to whether personal jurisdiction over Defendants has been established and grants the motion to dismiss on that basis. Because the Court hasn't considered whether transfer is appropriate in this case, the Order in *Nova* is not relevant here and the Court **DECLINES** to take judicial notice of it.

either, specific jurisdiction is not established.").

## II. Motion to Strike

Defendants urge the Court to strike Paragraphs 1–15, 64–65, and 79 of the FAC. They argue that these sections of the FAC contain "allegations vaguely accusing Defendants' counsel of misconduct," and that the statements are inappropriate and serve no purpose. (Mot. at 23–24.) The first fifteen paragraphs of the FAC include Ewing's garbled and inartful discussion of the Court's Local Rules, suggesting that Defendants' counsel somehow violated them. Ewing takes offense at Defendants' claim that he is a "serial TCPA litigant," even while admitting that he has "su[ed] dozens of telemarketers every year for the past five years" (FAC ¶ 18). Many of Ewing's suits have been brought in this very Court. Ironically, Ewing's FAC and Opposition are replete with personal attacks against Defendants, *e.g.,* referring to Defendants as "TCPA scofflaws," the "'El Chapo' of telemarking," or the "ultimate bad guy" (FAC ¶¶ 18, 79); references to irrelevant information; and accusations of perjury. Fed. R. Civ. P. 12(f) authorizes the Court to strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter" and Ewing's unsupported characterizations certainly qualify as such. But because the Court is dismissing Ewing's FAC for lack of personal jurisdiction, the Defendants' Motion to Strike is **DENIED** as moot.

Yet dismissing Ewing's Complaint doesn't completely settle the matter. Ewing has been repeatedly cautioned against engaging in unprofessional conduct, and in past cases the Court has stricken Ewing's filings and has sanctioned him for unacceptable behavior. As this Court pointed out in *Ewing v. LeadExcel, Inc.*, Case No. 18-cv-2845-LAB-JLB, Dkt. 60 (S.D. Cal. Apr. 27, 2020):

> [Ewing] is a law school graduate, well acquainted with the law, and a frequent plaintiff in this Court. He is well acquainted with the rules he violated on this occasion, having previously been ordered to read them and obey them. He has been repeatedly admonished and rebuked

by different judges. His improper and abusive filings have been repeatedly stricken, in part or in whole. He has had his electronic filing privileges revoked to prevent further abuse, and has been forbidden to block opposing counsel's emails. He has been rebuked for disobeying Court orders, violating civility requirements by harassing and baselessly insulting his opponents, attempting to mislead the Court, and engaging in misrepresentations calculated to push non-lawyers into agreeing to a quick settlement.,

The Court imposed monetary sanctions on Ewing in *LeadExcel* and ordered him, going forward, to obey the Federal Rules of Civil Procedure, the Sothern District's Civil Local Rules, and the Court's Standing Order. It appears Ewing has either ignored or flouted the Court's earlier admonitions. Ewing is therefore **ORDERED TO SHOW CAUSE** why sanctions shouldn't be imposed for his failure to comply with the above-mentioned rules and code of conduct. *See* Civil Local rule 83.1(a).

### III. CONCLUSION

This Court doesn't have personal jurisdiction over Defendants US Healthcare or Letko. Plaintiff's claims against them are **DISMISSED WITHOUT PREJUDICE**. Defendants' motion to strike is **DENIED AS MOOT**. Ewing is **ORDERED TO SHOW CAUSE** by <u>October 8, 2021</u>, why he shouldn't be sanctioned for failing to comply with the Court's previous admonitions cautioning him not to engage in personal attacks on opponents or on their counsel. Plaintiff's response must not be longer than 5 pages. **Failure to comply with this Order will subject Plaintiff to monetary sanctions, contempt proceedings, or both.**

IT IS SO ORDERED.

Dated: September 24, 2021

*Larry A. Burns*

Honorable Larry Alan Burns
United States District Judge